UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERRY LEE, et al.,                )       |   |
|              )   |   |
|     Plaintiffs,     )   |   |
|              )   |   |
| v.              )   | No. 3:99-CV-459 |
|              )   | (Guyton) |
| TENNESSEE VALLEY AUTHORITY,   )   |   |
|              )   |   |
|     Defendant.    )   |   |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action for unpaid overtime compensation brought by 75 plaintiffs who are all current or former employees of the defendant Tennessee Valley Authority ("TVA" or "TVA Nuclear"). The plaintiffs claim that TVA's June 1996 elimination of overtime pay for its management employees in TVA Nuclear, including the plaintiffs, violates Section 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207. The parties agree that 68 of these plaintiffs ("overlapping plaintiffs") have positions that overlap with positions at issue in Beene v. TVA, 3:99-cv-350 (E.D. Tenn.). The Beene decision was issued by this Court on June 3, 2004 and affirmed by the Sixth Circuit on October 11, 2005. The parties are in agreement that Beene will serve as the framework for disposing of the claims of these overlapping plaintiffs.

The subject matter of the Court is not in dispute. The parties have consented to magistrate judge jurisdiction for all proceedings in this case, including entry of judgment in accordance with 28 U.S.C. § 636(c). [Doc. 46].

**I.    PROCEDURAL HISTORY**

This case proceeded to a bench trial on the issue of liability with respect to the seven non-overlapping plaintiffs on December 12, 2005. The trial lasted three days. On March 24, 2006, the parties submitted their proposed findings of fact and conclusions of law. On June 1, 2006, the Court issued its Findings of Fact and Conclusions of Law, finding that the seven non-overlapping plaintiffs were not exempt from the FLSA's overtime requirements. The Court instructed the parties to file proposed findings of fact and conclusions of law with regard to the issues of damages and attorney's fees within 45 days. [Doc. 95].

The Court held a status conference on June 6, 2006. On the subject of liquidated damages, the parties announced that this issue was no longer an issue of dispute. The Court directed the defendant to review the plaintiffs' legal fee documentation by June 28, 2006, and another status conference was set for August 4, 2006 to hear a report from the parties regarding an agreed form of judgment in this matter. [Doc. 96].

At the status conference on August 4, 2006, the parties announced that they had reached an agreement as to the award of attorney's fees and that the award would be paid in the next few weeks. The parties further advised the Court that they were still in the process of gathering records reflecting the overtime hours worked by the plaintiffs. Accordingly, the Court ordered the parties to produce to each other all of the records in their possession regarding the number of overtime hours worked by the plaintiffs and set another status conference for November, 2006. [Doc. 99].

On November 13, 2006, the Court held another status conference. The parties advised that they were still in the process of comparing records reflecting the overtime hours worked by the plaintiffs. TVA was ordered to advise the plaintiffs by November 21, 2006 of TVA's position

on these issues, and the plaintiffs were ordered to advise TVA by December 6, 2006 whether the parties had reached a final agreement or whether a mediation would be required. The parties were ordered to contact the Court by December 6, 2006 and advise the Court of the status of the case. [Doc. 101].

On December 5, 2006, the Court again held a status conference with the parties, who advised that they were unable to agree upon the number of overtime hours worked by the plaintiffs. Accordingly, the Court set this matter for trial on the issue of damages. The Court further ordered the parties to confer and to stipulate all issues which were not in dispute. [Doc. 103].

Prior to the bench trial on damages, the parties submitted a Joint Stipulation [Doc. 112], containing 229 stipulations regarding the issue of the plaintiffs' damages. In addition, the plaintiffs submitted Proposed Issues, Findings of Fact and Conclusions of Law [Doc. 114], and TVA submitted a Calculation of Portal-to-Portal Time for Plaintiffs [Doc. 115] and a Trial Brief Regarding the Amended Department of Labor Regulations [Doc. 117].[1]

This case proceeded to a bench trial on damages on January 4, 2007. At the trial, TVA's counsel announced that he had reviewed plaintiff Roussel's documents the previous night and had no objection to their inclusion in the record. With regard to plaintiff Ulysses White, TVA's counsel stated that if plaintiffs' counsel could make a proffer that White had not taken any comp time since April 2004, that would no longer be an issue for TVA. Finally, with respect to plaintiffs Frye and Lee and the applicability of the Portal-to-Portal Act to their overtime claims, TVA's counsel stipulated that TVA would not seek any Portal-to-Portal time for these plaintiffs. At trial,

---

[1] TVA did not file any proposed findings of fact or conclusions of law, nor did it seek leave to do so after the January 4, 2007 trial.

the plaintiffs presented one witness, Ulysses White, who testified that he had not taken any comp time since April 2004. He was not cross-examined. Thereafter, the plaintiffs rested. TVA introduced the time records of plaintiffs Roche, Haney, Frye, Crowell, Totten, and Lee into evidence and rested. The Court then took this matter under advisement.

## II.     FINDINGS AND CONCLUSIONS

The following are the findings of fact and conclusions of law by the Court on the issue of damages:

1. Each of the plaintiffs in this action worked overtime hours for which they did not receive overtime compensation.

2. TVA did not maintain accurate records of the total number of hours worked each workweek by the plaintiffs.

3. The plaintiffs performed duties either primarily "inside the gate" or "outside the gate."

4. Work performed "inside the gate" can largely be documented by the gate access records, which records when a security badge is swiped to enter or exit a building. However, the gate access records are not a complete and accurate record of hours worked even for those plaintiffs who primarily worked "inside the gate," inasmuch as they also performed work "outside the gate," including training, taking trips, benchmarking, working on materials and projects, and attending pre-outage and post-outage meetings. In addition, the gate access records for the Watts Bar plant have missing data from August 2000 through February 2003. Accordingly, the Court finds that

the gate access records are not conclusive of the hours worked by the plaintiffs.

5. It is incumbent upon the employer to maintain records of hours worked each workday and the overtime compensation due to non-exempt employees. 29 C.F.R. § 516.2(7), (9). Those plaintiffs who did not maintain records of their actual hours worked estimated their hours of overtime by determining the outage periods occurring since August 27, 1999; they also ascertained the periods of "limited conditions of operation" which resulted in overtime work; they estimated that they worked overtime hours from one to three weeks prior to a scheduled outage; they did not include all of the overtime hours worked, inasmuch as there were daily shift turnover meetings not included; and they also consulted work logs of emergent work which occurred during this period. The plaintiffs' estimates are conservative, as opposed to exaggerated.

6. TVA does not have records to refute the estimates of overtime worked by the plaintiffs.[2]

7. TVA asserts that the hours of Ulysses White should be discounted because he did not deduct "comp time" from his estimated hours. At the damages

---

[2] In the Joint Stipulation [Doc. 112], TVA states that it "reserves the right to challenge the accuracy and basis of the [plaintiffs'] estimations in order to ensure as accurate as possible a calculation of the overtime hours worked by the Plaintiffs." However, TVA also notes in the Joint Stipulation that it did not intend to put on any witnesses with regard to this issue. Indeed, TVA offered no proof at the damages phase of the trial to counter the plaintiffs' proof regarding their estimations of the overtime hours that they worked.

phase of the trial, White testified that TVA is incorrect, and that he did not take comp time during the relevant period. TVA offered no records to refute White's testimony.

8. TVA asserts that Rudy Jake Roussel should be precluded from presenting evidence as to his overtime hours worked as he failed to produce supporting records. TVA filed a motion in limine [Doc. 110], seeking to preclude Roussel from submitting supporting records in support of his claim. However, at the trial on January 4, 2007, TVA's counsel stated that he had reviewed Roussel's records and that TVA had no objection to them. Accordingly, the Court will consider Roussel's supporting records.

9. Inasmuch as TVA did not comply with its obligations to maintain accurate records of the hours worked by the plaintiffs, and the estimates of time made by the plaintiffs are reasonable, the Court adopts the plaintiffs' estimates, as set forth in the parties' Joint Stipulation [Doc. 112], which is incorporated herein by reference.

**Effect of *Beene v. TVA* on Non-Exempt Status**

10. TVA contends that the overlapping plaintiffs' right to overtime compensation does not extend beyond June 3, 2004, the date of the Final Judgment in Beene v. TVA, 3:99-cv-350. The overlapping plaintiffs were determined by that Final Judgment to be non-exempt from the overtime pay requirements. TVA did not challenge this determination in the Final Pretrial Order [Doc. 68] entered on November 11, 2005, after the Final Judgment in Beene. The

Court finds that the entry of the Final Judgment in Beene would not and did not affect the non-exempt status of the overlapping plaintiffs.

**Effect of Revised Administrative Exemption**

11. TVA also contends that some of these plaintiffs' right to overtime compensation does not extend beyond August 23, 2004, the effective date of amendments to the regulations for administrative employees. The Court notes that this was an issue identified in the Final Pretrial Order as one for trial in the liability phase of this matter. However, TVA did not address this issue either at trial or in its proposed Findings of Fact and Conclusions of Law. The Court did address this issue with regard to the Maintenance Shift Field Supervisors, finding that they did not exercise independent judgment and discretion. [Doc. 95 at 38]. The Court found that inasmuch as TVA could not establish that the Maintenance Shift Field Supervisors exercised independent judgment and discretion under the old regulations, it also could not do so under the regulations as amended on August 23, 2004. [Id.].

   With respect to Task Managers (also known as Task Supervisors), the plaintiffs assert that they remain non-exempt under the new administrative regulations. The Court agrees. In Mohorn v. TVA, No. 3:05-cv-518, Doc. 11 (E.D. Tenn.), TVA stipulated that the Task Manager duties did not change after the amendments to the FLSA became effective. In Beene v. TVA, Judge Jordan found that "Task Supervisors act as information gatherers for and status reporter to management and other organizations within SNP," and

7

that "[t]hey also act as points of contact between contractor personnel and TVA staff." Beene v. TVA, No. 3:99-cv-350, Doc. 94 at 17. Based upon those findings, Judge Jordan concluded that "[w]ithin plaintiffs' primary duty, the Court does not find the exercise of discretion and independent judgment," id. at 58, and that "[t]he court therefore cannot conclude that these plaintiffs have 'the authority or power to make an independent choice, free from immediate direction or supervision . . . with respect to matters of significance." Id. at 59. Accordingly, they were determined to be non-exempt.

Judge Jordan's findings with regard to the Task Managers/Supervisors are almost identical to this Court's findings with respect to the Maintenance Shift Field Supervisors: "The primary duty of the Maintenance Shift Field Supervisors ("Field Supervisors") was to monitor or track the schedule and status of work, update its status through turnovers and keep management informed." [Doc. 95 at 29]. Based upon that finding, the Court concluded that there was "no evidence that while acting in such a capacity the Field Supervisors exercised any discretionary authority or decision-making on matters of significance." [Id. at 30].

This Court then addressed whether the Field Supervisors would be exempt under the amendments to the regulations. The Court held that if TVA could not establish that the plaintiffs exercised independent judgment

and discretion previously, they cannot do so under the revised regulations. [Id. at 38].

Just as TVA could not establish that the Task Supervisors/Managers exercised discretion and independent judgment in Beene, they also cannot do so under the revised regulations in this case. It is incumbent upon the employer to establish that any employee is exempt under the overtime compensation provisions of the Fair Labor Standards Act. See Douglas v. Argo-Tech Corp., 113 F.3d 67, 70 (6th Cir. 1997). TVA has not established that the Task Manager/Supervisor plaintiffs are non-exempt under the amended regulations, and therefore, the Court finds that these plaintiffs remain non-exempt.

**"Highly Compensated Employee" Exemption**

12. The parties stipulated that certain of the RadCon Shift Supervisors received total compensation exceeding $100,000, the threshold salary for an employee to be declared a "highly compensated employee" after August 23, 2006. Specifically, they stipulated that Calvin Felton exceeded the threshold in 2005 and 2006, and Michael Benson and Clifford Parks exceeded the threshold in 2004, 2005, and 2006. TVA did not assert in the liability phase of this litigation that any plaintiff was a "highly compensated employee" pursuant to 29 C.F.R. § 610(b)(2) (2004).

13. The parties agreed to use the decision in Beene v. TVA, 3:99-cv-350, as "the framework for disposing of the claims" of the Radcon Shift Supervisors,

9

Task Managers, and Production Managers. Those positions were found to be non-exempt in Beene, a determination not challenged by TVA in the liability phase of this litigation.

14. TVA seeks to require the plaintiffs to litigate their exempt status under the amendments to the Fair Labor Standards Act effective August 23, 2004. The Court notes that this was a lawsuit for overtime compensation which went to trial in December, 2005. TVA did not raise this issue in the Pretrial Order [Doc. 68], nor did it raise this issue at the liability phase of the trial. Therefore, TVA cannot now raise the defense that the plaintiffs are exempt as "highly compensated employees" under the amended regulations.

**Applicability of the Portal-to-Portal Act**

15. The parties have already stipulated that the gate access records are not a complete and accurate record of hours worked even for those plaintiffs who primarily worked "inside the gate," inasmuch as they also performed work "outside the gate," including training, taking trips, benchmarking, working on materials and projects, and attending pre-outage and post-outage meetings. The plaintiffs proffer that Ron Rogers would testify that the Browns Ferry Nuclear Plant plaintiffs' assigned work areas are at least 10 minutes from the gate access, and that the plaintiffs have counted this 20-minute walking time in their overtime totals. The plaintiffs further proffer that Ron Rogers would not have any personal knowledge as to the "walking time" of the Watts Bar plaintiffs.

16. The plaintiffs proffer that Terry Lee, Mike Frye, and Jake Roussel would testify that before 9/11 and the consequential changes to security effective in the summer of 2005, they parked outside the building in which they worked. Further, the plaintiffs proffer that Mike Frye would testify that even after they were required to go through the gate, there were many occasions where work was performed before accessing and after accessing. TVA presented no evidence to refute this proffered testimony.

17. TVA has submitted a calculation of the portal-to-portal time for plaintiffs Frye, Grooms, Lee, Roussel, White, Garner, and Phipps. [Doc. 115]. However, in light of the testimony of Lee, Frye, and Roussel, as well as the fact that the plaintiffs have already counted the 20-minute walking time in their overtime totals, the Court finds that there is no reliable way to estimate the effect of the Portal-to-Portal Act on each of these plaintiff's claim for overtime. The Court will not engage in conjecture. Accordingly, the "walking time" asserted by TVA will not be deducted from these plaintiffs' overtime calculations.

**Ulysses White's Comp Time**

18. TVA asserts that the hours of Ulysses White should be discounted because he did not deduct "comp time" from his estimated hours. TVA seeks to deduct comp time on an hour-for-hour basis. At the damages phase of the trial, White testified that TVA is incorrect, and that he did not take comp time during that period. TVA has no records to refute his testimony.

Accordingly, the Court will not deduct from White's estimate the comp time that TVA seeks to deduct.

**Injunctive Relief – Maintenance Shift Field Supervisors**

19. The plaintiffs assert that injunctive relief is appropriate as to the future payment of overtime compensation with respect to the Maintenance Shift Field Supervisors. TVA asserts that injunctive relief is not appropriate because the Court has not determined whether the highly compensated employee exemption applies to these plaintiffs.

    In determining whether to issue a prospective injunction under the FLSA, the Court should consider the following factors: "(1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance." Reich v. Petroleum Sales, Inc., 30 F.3d 654, 657 (6th Cir. 1994). In the present case, the Court notes that TVA has failed and refused to pay the plaintiffs found to be non-exempt any overtime for any period of work – either before or after the decision in Beene. The Court finds that TVA has not demonstrated a willingness to comply with the FLSA in the future. Accordingly, the granting of injunctive relief in this case is appropriate. Should TVA fail in the future to pay overtime to an employee it deems highly compensated, it may raise that defense to any action for overtime compensation brought at that time.

**Injunctive Relief – Task Managers**

20. The plaintiffs assert that injunctive relief is appropriate as to the future payment of overtime compensation with respect to the Task Managers. TVA asserts that injunctive relief is not appropriate because the Court has not determined whether the administrative exemption under the amended regulations affects their non-exempt status.

21. For the reasons stated herein, the Court has determined that TVA cannot establish that the Task Managers exercised discretion and independent judgment in this case. Accordingly, the Court finds that the non-exempt status of these plaintiffs is unaffected by the amended regulations.

22. The Court notes that TVA has failed and refused to pay the plaintiffs found to be non-exempt any overtime for any period of work – either before or after the decision in <u>Beene</u>. The Court finds that TVA has not demonstrated a willingness to comply, and therefore, the granting of injunctive relief in this case is appropriate with respect to the Task Managers.

**Plaintiffs' Damages**

Based on the foregoing and for the reasons stated herein, it is hereby **ORDERED** as follows:

23. Sue H. Roddy is entitled to damages, including liquidated damages, of $79,663.30.

24. Steven M. Moon is entitled to damages, including liquidated damages, of $66,711.47.

25. Calvin T. Felton is entitled to damages, including liquidated damages, of $170,845.16.

26. Michael A. Benson is entitled to damages, including liquidated damages, of $143,304.00.

27. Michael D. O'Shaughnessy is entitled to damages, including liquidated damages, of $117,760.82.

28. Clifford W. Parks is entitled to damages, including liquidated damages, of $127,135.06.

29. John Crowell is entitled to damages, including liquidated damages, of $116,883.84.

30. Mike Frye is entitled to damages, including liquidated damages, of $406,108.35.

31. Phil Grooms is entitled to damages, including liquidated damages, of $190,184.66.

32. Merritt Haney is entitled to damages, including liquidated damages, of $83,370.00.

33. Terry W. Lee is entitled to damages, including liquidated damages, of $369,639.57.

34. James Roche is entitled to damages, including liquidated damages, of $321,965.66.

35. Rudy J. Roussel is entitled to damages, including liquidated damages of $418,798.83.

36. Ulysses White is entitled to damages, including liquidated damages, of $455,415.32.

37. Jerry Cofield is entitled to damages, including liquidated damages, of $64,300.84.

38. William Mike Totten is entitled to damages, including liquidated damages, of $181,373.61.

39. Rich Bowling is entitled to damages, including liquidated damages, of $185,060.07.

40. Walt Christopher is entitled to damages, including liquidated damages, of $284,040.45.

41. Gilbert Wade Garner is entitled to damages, including liquidated damages, of $274,522.87.

42. Robert Phipps is entitled to damages, including liquidated damages, of $154,793.10.

43. Jerry Richardson is entitled to damages, including liquidated damages, of $47,212.73.

44. Willis Branton is entitled to damages, including liquidated damages, of $550,460.82.

45. Jack Watson is entitled to damages, including liquidated damages, of $83,529.91.

46. Stan Whitehurst is entitled to damages, including liquidated damages, of $289,456.06.

47. Tony G. Jones is entitled to damages, including liquidated damages, of $169,059.39.

48. Jerry McCullough is entitled to damages, including liquidated damages, of $196,091.76.

49. Bobby Ron Shadrick is entitled to damages, including liquidated damages, of $108,297.30.

50. Injunctive relief is appropriate as to the future payment of overtime compensation with respect to the Maintenance Shift Field Supervisors, requiring that TVA pay them time and one-half for each hour of work over 40 in a given week. Should TVA assert the highly compensated employee exemption in the future, it will also have to show that the duties test is satisfied.

51. The Task Managers are non-exempt under the new administrative regulations and are entitled to injunctive relief, requiring that TVA pay them time and one-half for each hour of work over 40 in a given week..

52. The plaintiffs shall file a petition for attorney's fees with appropriate supporting documentation by **March 1, 2007**. TVA shall file its response to the plaintiffs' petition by **March 15, 2007**.

53. The parties shall submit a joint proposed judgment in accordance with these findings of fact and conclusions of law by **March 15, 2007**.[3]

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3]The parties' Joint Stipulation [Doc. 112] and the plaintiffs' Proposed Findings of Fact and Conclusions of Law [Doc. 114] specifically address only the damages to be awarded to 27 of the 75 plaintiffs remaining in this litigation. The Court expects the parties to address the claims of all remaining plaintiffs in their proposed judgment.